# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

### CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CALVIN GILLETTE,<br><br>Defendant. | 3:17-CR-30122-RAL<br><br>**REPORT AND RECOMMENDATION ON MOTIONS TO SUPPRESS STATEMENTS AND TRIBAL COURT GUILTY PLEA** |

Calvin Gillette is charged by federal Indictment with assaulting his significant other at a time when he had two prior domestic abuse convictions. In separate motions, he seeks to (1) suppress his unwarned statements after being handcuffed and detained; and (2) keep his tribal guilty plea – arising out of the same incident as the federal offense – from being used to prove the truth of the matters asserted in the plea. Because some of Gillette's statements were evoked in violation of *Miranda*, this motion should be granted in part and denied in part. His second motion – which demands that the plea he made be excluded on Sixth and Fifth Amendment grounds – lacks merit and should be denied in its entirety.

## BACKGROUND

On January 31, 2017, Daniel Reynolds, then a police officer for the Rosebud Sioux Tribe, responded to a domestic dispute at a house in Rosebud, South Dakota. Once

inside the dwelling, Reynolds placed Gillette in handcuffs and detained him. Reynolds at first talked to Lucille Running Enemy, the alleged victim, and obtained a statement from her. Next, he questioned Gillette – briefly – with no *Miranda* advisement. Reynolds then asked to speak with the reporting person, Amanda Roubideaux, about what happened and did so. Afterwards, he packed up some things for Gillette and escorted him out of the residence. Just past the doorway, Gillette took off running. Reynolds gave chase and eventually found Gillette hiding in the basement of a nearby home. There, tribal officers collared Gillette and transported him to jail.

The tribal prosecutor charged Gillette with several offenses including domestic abuse.[1] In May, 2017, Gillette appeared with counsel in tribal court and pled guilty to the domestic abuse offense and was sentenced on it (and three other offenses) to 365 days of incarceration, with 272 days suspended. He was also fined and placed on probation for one year. As part of his probation, he was ordered not to have contact with Running Enemy.

Four months later, a federal grand jury indicted Gillette and charged him with domestic assault by an habitual offender.[2] The assault charge sprouted from the same incident and offense Gillette had earlier pled guilty to in tribal court. Following his arraignment and not guilty plea on the federal charge, Gillette filed two motions

---

[1]*See* Law and Order Code of the Rosebud Sioux Tribe, §5-38-2.

[2]*See* 18 U.S.C. §117(a)(1).

2

seeking to suppress: (1) the statements he made to Officer Reynolds; and (2) his tribal guilty plea. The Court held an evidentiary hearing on the motions, heard testimony, and received five exhibits into evidence, including a compact disc of Reynolds's body cam and transcript of the same and an audio recording of Gillette's tribal plea proceedings.

## DISCUSSION

### A. Interrogation

In his first motion, Gillette claims he was subject to custodial interrogation without being advised of his *Miranda*[3] rights. He argues that the un-*Mirandized* questioning of him requires suppression of certain statements he made after being handcuffed in his home. It is clear Gillette was never given any *Miranda* warnings. And there is no dispute Gillette was in custody when he spoke. The only question is whether he was interrogated.

Under the Fifth Amendment, a suspect is guaranteed the right to remain silent and to the assistance of counsel during custodial interrogation.[4] If the suspect is not informed of his rights while in custody, then any statements gained from interrogating him are generally inadmissible as substantive evidence.[5] For purposes of *Miranda*,

---

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] *See Miranda*, 384 U.S. at 444-45.

[5] *See Dickerson v. United States*, 530 U.S. 428, 432, 441 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994); *Oregon v. Elstad*, 470 U.S. 298, 317 (1985); *United States v.*
(continued...)

"interrogation . . . must reflect a measure of compulsion above and beyond that inherent in custody itself."[6]

Interrogation includes not only express questioning, but also words or conduct an officer should know are "reasonably likely to elicit an incriminating response from the suspect."[7]  This latter test "focuses primarily upon the perceptions of the suspect, rather than the intent of the police. . . . A practice that the police should know is reasonably likely to evoke an incriminating response from [the] suspect thus amounts to interrogation."[8]  But the police "cannot be held accountable for the unforeseen results of their words or actions."[9]

*Miranda* does not bar, from use at trial, volunteered or spontaneous statements made during a conversation not initiated by a police officer.[10]  And the officer's request

---

*Sanchez*, 676 F.3d 627, 630 (8th Cir. 2012).

[6]*Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir. 1989) (*quoting Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)), *cert. denied*, 496 U.S. 909 (1990).

[7]*Pennsylvania v. Muniz*, 496 U.S. 582, 600-01 (1990) (*quoting Innis*, 446 U.S. at 301).

[8]*Innis*, 446 U.S. at 301.

[9]*Id*. at 301-02.

[10]*See Miranda*, 384 U.S. at 478; *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005); *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000); *United States v. Hatten*, 68 F.3d 257, 262 (8th Cir. 1995), *cert. denied*, 516 U.S. 1150 (1996); *see generally* 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure*, §6.7(d) (4th ed. 2015 & Dec. 2017 update) (volunteered statements and follow-up questioning).

4

for or clarification of such statements generally does not amount to interrogation as conceptualized in *Miranda*.[11]

## 1. Initial Statements

After putting Gillette in wrist restraints, Office Reynolds asked Gillette what happened and if he had been drinking. Gillette made inculpatory statements in response to these questions before engaging in an argumentative conversation with Running Enemy. The questions were ones that, from an objective standpoint, were designed to prompt, and lead Gillette to make, self-incriminating statements. His statements[12] were the product of interrogation – as that term has been defined and applied[13] -- and obtained in violation of *Miranda*. They must, therefore, be suppressed as substantive evidence – a point the Government concedes.[14]

---

[11]*See United States v. Jackson*, 852 F.3d 764, 772 (8th Cir. 2017); *United States v. Crisolis-Gonzalez*, 742 F.3d 830, 837 (8th Cir. 2014); *Chipps*, 410 F.3d at 445; *United States v. Koontz*, 143 F.3d 408, 411 (8th Cir. 1998); *see generally* 2 *Criminal Procedure* §6.7(d) & nn. 168-70.

[12]*See* Mot. Hrg. Exs. 1 at 4:20-41 (8:36:10-31) & 5 at 4 (marked section) (Jan. 19, 2018).

[13]*See generally* 2 *Criminal Procedure* §6.7(a)-(c) (interrogation, questioning and other "words or actions").

[14]*See* Mot. Hrg. Tr. 21, 24 (Jan. 19, 2018); *see also id.* at 14, 20 (the lack of any *Miranda* advisement was an "oversight" and something Officer Reynolds "should have" done before asking Gillette "what happened").

Even so, Gillette's statements are admissible as impeachment evidence if he elects to testify in his own defense at trial.[15] They were ones he wanted to make and were not the offspring of questioning that was so coercive it overbore his will and shoehorned his decision making capacity.[16]

That Gillette was in custody does not mean he could not make voluntary statements.[17] He certainly had the efficacy to speak for himself, and did so – of his own volition – despite the *Miranda* transgression.

## 2. Later Statements

The interrogation ended abruptly when Gillette and Running Enemy began quarreling with each other. Officer Reynolds managed to break up the squabble by sending Running Enemy to get her sister, Roubideaux – who had originally called and summoned the police. Roubideaux tried to relate what had taken place earlier, but Gillette kept interrupting her. Reynolds then went over with Gillette to the couch area of the living room, finished packing Gillette's bag, and got him ready to leave. During this process, Reynolds talked to Gillette, asking Gillette some questions and responding

---

[15]See *Oregon v. Hass*, 420 U.S. 714, 722-23 (1975); *Harris v. New York*, 401 U.S. 222, 224-26 (1971).

[16]See *Hass*, 420 U.S. at 722-23 (holding that suspect's statements were voluntary and admissible for impeachment purposes where "the pressure on him was no greater than that on any person in like custody or under inquiry by any investigating officer").

[17]See *Innis*, 446 U.S. at 299-300; *Schneckloth v. Bustamante*, 412 U.S. 218, 225-27 (1973); *Chipps*, 410 F.3d at 445; *United States v. Lockett*, 393 F.3d 834, 838 (8th Cir. 2005), *cert. denied*, 546 U.S. 1198 (2006); *Hatten*, 68 F.3d at 262.

to his inquiries and requests, before ushering him – still in wrist manacles – through the front door.

Gillette contends that the statements he made during his bickering with Running Enemy and until his apprehension outside the residence should all be excluded because they were tainted by and flowed from the initial *Miranda* breach. The Court disagrees.

Gillette's statements were spontaneous[18] or in response either to general, benign, innocuous questions[19] or attempts, on the part of Officer Reynolds to clarify or confirm what Reynolds had already said.[20] Reynolds' remarks and questions were not designed to broaden Gillette's prior statements, enhance his guilt, or increase the number or level of offenses.[21] *Miranda* does not safeguard Gillette from making unbidden statements under circumstances that Reynolds neither begun nor engendered.[22]

---

[18]*See United States v. Cowan*, 674 F.3d 947, 958 (8th Cir.), *cert. denied*, 568 U.S. 922 (2012); *United States v. Howard*, 532 F.3d 755, 761-762 (8th Cir. 2008); *Chipps*, 410 F.3d at 445; *Lockett*, 393 F.3d at 838; *Butzin*, 886 F.2d at 1018.

[19]*See* 2 *Criminal Procedure*, §6.7(b) & n.70.

[20]*See United States v. Jones*, 842 F.3d 1077, 1083 (8th Cir. 2016); *Chipps*, 410 F.3d at 445-46; *Lockett*, 393 F.3d at 838; *Koontz*, 143 F.3d at 411; *Hatten*, 60 F.3d at 262; *Butzin*, 886 F.2d at 1018.

[21]*See Chipps*, 410 F.3d at 445-46; *Butzin*, 886 F.2d at 1018; *see generally* 2 *Criminal Procedure*, §6.7(d) & nn. 169-70.

[22]*See Crisolis-Gonzalez*, 742 F.3d at 837; *Howard*, 532 F.3d at 762; *Chipps*, 410 F.3d at 445; *Butzin*, 886 F.2d at 1018.

The Court has considered – as it must – whether Gillette had any peculiar susceptibilities.[23] He did not – at least that Officer Reynolds was aware of.

Officer Reynolds had no knowledge of Gillette having any distinctive vulnerabilities or propensities to make sudden impromptu remarks.[24]  Whatever stimulus Reynolds' words or actions may have created, it did not rise to the level of interrogation to require the exclusion of Gillette's unsolicited statements.[25]

## B. Sixth and Fifth Amendments

Gillette attacks the validity of the guilty plea – to the crime of domestic abuse – he made in tribal court.  That plea stemmed from the same incident as the federal domestic assault offense he now stands charged with.   He says that because the plea was inadequate and contravened the Sixth and Fifth Amendments, it cannot be used against him in his federal case.

### 1. Brief Version

Boiled down, the question is whether it is constitutionally permissible for the Government to use Gillette's tribal guilty plea – obtained in full compliance with federal and tribal statutory laws – to prove the underlying facts for a subsequent federal charge that emanates from the same offense conduct.  The short answer to this question is

---

[23]*See Muniz,* 496 U.S. at 601; *Innis,* 446 U.S. at 302 & n.8.

[24]*See Innis,* 446 U.S. at 303.

[25]*See* Mot. Hrg. Exs. 1, 5; Mot. Hrg. Tr. 15-18.

"yes." Because his plea occurred in proceedings that adhered to the Indian Civil Rights Act (ICRA)[26] and tribal law, the plea was valid when entered and the use of it at trial – to show that he committed the domestic assault offense charged – does not violate the Constitution. In particular, Gillette suffered no infringement of his Sixth Amendment right to counsel – because that Amendment does not apply to tribal court proceedings.[27] And he was accorded the "due process of law" to which he was entitled to under the Fifth Amendment.[28]

## 2. Detailed Version

### a. Sixth Amendment

#### i. Right to Counsel

The Bill of Rights, including the Sixth Amendment right to counsel, does not apply to Indian tribes and their court proceedings.[29] This is because "[a]s separate sovereigns pre-existing the Constitution, tribes have historically been regarded as

---

[26]Pub. L. 90-284, Title II, §202, 82 Stat. 77 (1968) (codified at 25 U.S.C. §1301, *et. seq.*)

[27]*See United States v. Bryant*, 136 S.Ct. 1954, 1962-66 (2016); *United States v. Drapeau*, 827 F.3d 773, 777 (8th Cir. 2016); *United States v. Shavanaux*, 647 F.3d 993, 996-98 (10th Cir. 2011), *cert. denied*, 565 U.S. 1263 (2012); *United States v. Cavanaugh*, 643 F.3d 592, 595-96, 603-05 (8th Cir. 2011), *cert. denied*, 565 U.S. 1229 (2012).

[28]*See Bryant*, 136 S.Ct. at 1966; *Shavanaux*, 647 F.3d at 998-1002.

[29]*See Bryant*, 136 S.Ct. at 1962; *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 337 (2008).

unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority."[30]

Congress though has plenary authority to regulate tribal affairs and limit or expand tribal sovereignty under the Indian Commerce and Treaty Clauses[31] of the Constitution.[32]    Based on this authority, Congress enacted the ICRA, selectively conferring a gamut of procedural safeguards to tribal defendants "similar, but not identical, to those contained in the Bill of Rights. . . ."[33]    As currently amended,[34] the ICRA requires only the appointment of counsel for indigent criminal defendants in tribal court for prosecutions that result in incarceration for greater than one year.[35] So if a tribe decides not to provide for a right to appointed counsel through its own laws, indigent defendants have no constitutional or statutory right to the appointment of counsel unless the tribal court imposes a sentence beyond one year.[36]

---

[30]*Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 56 (1978).

[31]*See* U.S. Const. art. I, §8, cl.3 & art. II, §2, cl. 2.

[32]*See United States v. Lara,* 541 U.S. 193, 200 (2004); *Tavares v. Whitehouse,* 851 F.3d 863, 869-70 (9th Cir. 2017), *petition for cert. filed,* (U.S. Sept. 21, 2017)(No. 17-429).

[33]*Martinez,* 436 U.S. at 57; *see also id.* at 62-63 (the ICRA "modified the safeguards of the Bill of Rights to fit the unique political, cultural, and economic needs of tribal governments").

[34]*See* Tribal Law and Order Act of 2010, Pub. L. No. 111-211, Title II, §234(a), 124 Stat. 2279 (2010).

[35]*See* 25 U.S.C. §1302(a)(6), (b) & (c)(2).

[36]*See Bryant,* 136 S.Ct. at 1962; *Cavanaugh,* 643 F.3d at 596.

Gillette pled guilty in Rosebud tribal court to domestic abuse and received a custody sentence of less than one year.[37]  When he entered his plea, Gillette had been appointed a licensed attorney and member of the tribal bar to represent him.[38]  The appointment complied with the Tribe's Constitution and Law and Order Code[39] and the ICRA.[40]  Although similar to the Sixth Amendment right to counsel, these laws are not coextensive with it.[41]

---

[37]*See* Mot. Hrg. Exs. 3 & 4 at 23:41-31:22.

[38]*See* Mot. Hrg. Tr. 29-33.

[39]*See* Const. and Bylaws of the Rosebud Sioux Tribe of South Dakota, art. X, §1(f) (stating that the tribe shall not deny a criminal defendant "the right to . . . assistance of counsel for his or her defense including the right to have counsel provided subject to income guidelines"); The Law and Order Code of the Rosebud Sioux Tribe, §7C3b ("In the event a defendant is determined to be indigent by the Court and wishes to be represented by counsel, the Court shall appoint counsel for the defendant with the exception that no defendant shall have the right to have appointed professional counsel at the tribe's expense."), §9-2-6 ("Every person appearing as a party in a judicial procedure before a Tribal court shall have the right to be represented either by lay counsel or professional attorneys and have such counsel and attorneys assist in the preparation and presentation of his case.  The Rosebud Sioux Tribe shall have no obligation to provide or pay for such lay counsel or professional attorneys and only those persons who have first obtained admission to practice before the Tribal Courts shall appear therein."), §9-2-7 ("Any person admitted to practice before the Tribal Court will accept and represent indigent clients without compensation or without full compensation when directed to do so by a Judge of the Tribal Court."); *see also United States v. Long*, 870 F.3d 741, 747 (8th Cir. 2017) (discussing Rosebud tribal law and provisions from the tribal Constitution and Law and Order Code), *petition for cert. filed*, (U.S. Jan. 12, 2018) (No. 17-7456); *United States v. Red Bird*, 287 F.3d 709, 713-14 (8th Cir. 2002) (explaining the right to counsel under Rosebud tribal law).

[40]*See Bryant*, 136 S.Ct. at 1962.

[41]*See id.*

This case is not one in which a tribal defendant entered a guilty plea without the benefit of counsel. Gillette had a professional attorney, licensed in state and tribal court, with him at the time of the plea taking. His plea complied with the ICRA and tribal law and was thus binding when made.[42] Use of the plea in a later filed federal case does not violate "anew" the Sixth Amendment, because that Amendment was never infringed in the first place.[43] It matters not whether Gillette's attorney was licensed in Nebraska and not South Dakota.[44] Because Gillette's plea was obtained in accord with the ICRA and the laws of the Rosebud Tribe, the plea is enforceable and may be used to prove up his federal domestic abuse offense.[45]

### ii. *Padilla*

Gillette alternatively claims that the Government should be barred from using his tribal court guilty plea because the plea was not made knowingly and voluntarily and as such is constitutionally invalid. More precisely, he argues that his Sixth

---

[42]*See Bryant*, 136 S.Ct. at 1964-66.

[43]*See id.* at 1966 (*citing Shavanaux*, 647 F.3d at 998); *see also Long*, 870 F.3d at 747 (because defendant was represented in the tribal court proceeding -- at which he was convicted of misdemeanor domestic violence -- his conviction was valid).

[44]*See Bryant*, 136 S.Ct. at 1965-66 (uncounseled tribal court convictions, valid at their inception, comport with the Sixth Amendment and may be used in an ensuing federal prosecution) ("a defense attorney licensed to practice law by any jurisdiction in the United States that applies appropriate professional licensing standards and effectively ensures the competence and professional responsibility of its licensed attorneys").

[45]*See id.*; *Shavanaux*, 647 F.3d at 998; *Cavanaugh*, 643 F.3d at 603-05.

Amendment right to counsel was dishonored because his counsel never informed him of the consequences of his guilty plea – that it could be used against him in a successive criminal action. This argument falls flat because the Sixth Amendment does not apply to tribal court proceedings.[46] It also lacks merit for another reason: Advice about collateral consequences does not violate the Sixth Amendment.

"The long-standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to [a] defendant.'"[47] What this means is that a defendant must be informed of the "direct," but not the "collateral," consequences of his plea.[48] The contrast between the two "turns on whether the result represents a definite, immediate[,] and largely automatic effect on the range of the defendant's punishment."[49]

Federal appellate courts, which have considered the scope of the Sixth Amendment right to counsel in the plea negotiations realm, have decided "that

---

[46]*See Bryant,* 136 S.Ct. at 1964.

[47]*Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (*quoting North Carolina v. Alford,* 400 U.S. 25, 31 (1970)).

[48]*See George v. Black,* 732 F.2d 108, 110 (8th Cir. 1984); *see also Brady v. United States,* 397 U.S. 742, 755 (1970) (a plea of guilty must be entered by "one fully aware of the direct consequences"); *United States v. Williams,* 104 F.3d 213, 216 (8th Cir. 1997) (defendant need only be advised of the direct consequences he may face within the particular system; a court need not undertake to inform him of his potential federal liability).

[49]*George,* 732 F.2d at 110 (*quoting Cuthrell v. Director Patuxent Inst.,* 475 F.2d 1364, 1365 (4th Cir.), *cert. denied,* 414 F.2d 1005 (1973).

'counsel's failure to inform a defendant of the collateral consequences of a guilty plea is *never*' a violation of the Sixth Amendment."[50]  The Eighth Circuit has definitively stated that the use of a guilty plea in a subsequent federal proceeding is not a direct consequence.[51]

The variation between direct and collateral consequences of a guilty plea has, to some extent, been called into doubt by the Supreme Court's decision in *Padilla v. Kentucky*.[52]  The *Padilla* Court held that under the Sixth Amendment, counsel must inform a defendant "whether his plea carries a risk of deportation" for the plea to be valid.[53]  In doing so, the Court determined that deportation advice – as a potential consequence of a guilty plea – was not "categorically removed" from the bounds of the

---

[50]*Chaidez v. United States*, 568 U.S. 342, 350 (2013) (emphasis added) (*quoting Santos-Sanchez v. United States*, 548 F.3d 327, 334 (5th Cir.), *cert. granted judgment vacated*, 559 U.S. 1046 (2010).

[51]*See Williams*, 104 F.3d at 216 (*citing United States v. Long*, 852 F.2d 975, 979 (7th Cir. 1988)) *see also United States v. Ayala*, 601 F.3d 256, 270 (4th Cir.) ("Whether a guilty plea in state court might be used in a subsequent federal prosecution is plainly a collateral consequence.  In our system of dual sovereigns, state and federal courts run on separate tracks; thus, a guilty plea in one does not automatically lead to consequences in the other." *** Defendant's "plea was not invalid simply because he was not informed of the possibility that it might be used against him in a [successive prosecution in federal court.]"), *cert. denied*, 562 U.S. 910 (2010); *McCune v. Denney*, No. 13-0452-CV-NKL-P, 2014 WL 1225642 at *5 (W.D. Mo. March 25, 2015) ("Although an attorney has a duty to inform a defendant of the direct consequences of his guilty pleas, the use of a plea in a subsequent proceeding is not a direct consequence.").

[52]559 U.S. 356 (2010).

[53]*Id.* at 374.

14

Sixth Amendment and left intact the profusion of lower court decisions applying the distinction in other contexts.[54]

Three years later, the Supreme Court revisited its decision and held that *Padilla* had announced a "new rule" and did not apply to cases pending on collateral review.[55] The Court's retrospective analysis is helpful in determining the breadth of *Padilla's* holding. Importantly, the Court reaffirmed the "unique" nature of deportation and did not renounce the direct-collateral distinction.[56] And even after *Padilla* and the Court's follow up interpretation of it, courts have continued to adhere to the same distinction on matters other than deportation.[57]

---

[54]*See id.* at 364-66; *see also United States v. Reeves*, 695 F.3d 637, 640 (7th Cir. 2012) (observing that "*Padilla* is rife with indications that the Supreme Court meant to limit its scope to the context of deportation only"), *cert. denied*, 568 U.S. 1239 (2013); *United States v. Nicholson*, 676 F.3d 376, 382 (4th Cir. 2012) (pointing out that "[i]n *Padilla*, the Court . . . specifically declined to address 'how to distinguish between direct and collateral consequences' of a guilty plea" (quoting *Padilla*, 559 U.S. at 364 n.8)).

[55]*Chaidez*, 568 U.S. at 358.

[56]*Id.* at 352-53.

[57]*See e.g. Parrino v. United States*, 655 Fed. Appx. 399, 403 (6th Cir. 2016) ("the holding in *Padilla* was limited to advice 'concerning the specific risk of deportation . . . .'"); *Chavarria v. United States*, 739 F.3d 360, 362-63 (7th Cir. 2014) (holding that "[a] lawyer's advice about matters not involving the 'direct' consequences of the criminal conviction – collateral matters – is, in fact, irrelevant under the Sixth Amendment; "*Padilla* departed from this direct-collateral distinction [only] because of the 'unique' nature of deportation"); *Santiago v. Laclaire*, 588 Fed. Appx. 1, 4 (2d Cir. 2014) ("*Padilla's* narrow holding [was] limited specifically to the unique penalty of deportation. . . ."), *cert. denied*, 135 S.Ct. 1187 (2014); *Denney*, 2014 WL 1225642 at *5 (citing *Padilla* and noting that petitioner's mandatory minimum sentence in a separate proceeding is distinguishable from the consequence of automatic deportation).

*Padilla* establishes that a certain consequence – deportation – even though technically "collateral," may be so embedded in the underlying criminal process and so severe and likely to result that notice of it must be made to satisfy the dictates of the Sixth Amendment. But the deportation consequence has been the only one – to date – that courts have ratified.

The collateral consequence at issue is not at all like the one that justified the limited exception *Padilla* carved into the plea process. Unlike deportation, Gillette's tribal guilty plea did not automatically trigger his federal charge. Instead, the plea was but one card the Government had available to play if it decided to prosecute him under federal law. Put differently, the offense Gillette now faces resulted from an independent criminal process subject to its own set of procedural bulwarks. In this respect, Gillette's consequence stands in stark contrast to the one the Supreme Court tackled in *Padilla*.

Even in the aftermath of *Padilla*, Gillette's guilty plea is a collateral consequence that is not under the Sixth Amendment's right to counsel. His consequence is too different and removed from the federal charge to create a protectable interest and provide him with Sixth Amendment relief.

### b. Fifth Amendment

Gillette likewise invokes the Fifth Amendment's Due Process Clause in support of his claim that the guilty plea, he made in tribal court, should not be used against him as offense based evidence. But, as previously discussed, his plea was in tune with both

16

the ICRA and tribal law and thus comported with due process strictures.[58]  Unless the

plea has been vacated through habeas review or another means, it is valid and entitled

to be recognized – under principles of comity or otherwise.[59]

   This is true even if there were no open court reading of Gillette's tribal complaint

or a factual basis made for his guilty plea.  Gillette acknowledged that he understood

the complaint and that his plea to the domestic abuse charge was voluntary.[60]  The tribal

court advised him of the charge, the maximum penalty he faced on it, his rights, and the

consequences of a guilty plea.[61]  His own counsel affirmed that Gillette comprehended

the ramifications of entering such a plea.[62]  Tribal law then did not expressly require

that a factual basis be provided before a plea was accepted (which remains true today).[63]

---

[58]*See Bryant*, 136 S.Ct. 1966; *Shavanaux*, 647 F.3d at 1000.

[59]*See Bryant*, 136 S.Ct. at 1966; *Shavanaux*, 647 F.3d at 1000-01; *see also State v. Spotted Eagle*, 316 Mont. 370, 379, 71 P.3d 1239, 1245-45 (holding that courts must recognize uncounseled tribal convictions which complied with the ICRA; "[c]omity requires that a court give full effect to the valid judgments of a foreign jurisdiction according to that sovereign's laws, not the Sixth Amendment standard that applied to proceedings [in the court where recognition is sought];" "the practice of failing to fully recognize convictions from individual tribal courts also risks imposing inappropriately sweeping standards upon diverse tribal governments, institutions and cultures," which undermines the ICRA's objective of allowing tribes to adopt "their own tribal court[s] and criminal justice system[s]"), *cert. denied*, 540 U.S. 1008 (2003).

[60]*See* Mot. Hrg. Ex. 4 at 27:11-14, 28:55-29:06.

[61]*See id.*at 24:58-25:32, 28:07-40.

[62]*See id.* at 29:07-12.

[63]*See* Law and Order Code, §§7C4, D1.

Given that the plea proceedings complied with the ICRA and the Tribe's own laws, Gillette's plea is reliable and should be respected.[64]

The same goes for any claim Gillette makes that the use of his tribal plea offends the equal protection component of the Due Process Clause. Such a claim fails because there is no racial classification – only a political one – and because any differential treatment is rationally related to a legitimate government interest – and obligation – to protect Native Americans.[65]

## C. Opposing Party's Statements

Having concluded that Gillette's tribal guilty plea may be used as evidence at his trial, what is the legal foundation for admitting it? The retort is simple: The statements Gillette made as part of his plea are "admissions" by a party opponent and are admissible as non-hearsay evidence.[66]   The Government will be offering the plea

---

[64]*See id.*

[65]*See United States v. Antelope*, 430 U.S. 641, 644, 646 (1977); *Morton v. Mancari*, 417 U.S. 535, 554-555 & n. 24 (1974); *Shavanaux*, 647 F.3d at 1001-02; *see also Cavanaugh*, 643 F.3d at 605-06 (*citing Antelope* and observing that the rule expressed in it "appears to be directly on point" as to defendant's equal protection argument).

[66]*See* Fed. R. Evid. 801(d)(2)(A); *see also United States v. Holmes*, 794 F.2d 345, 349 (8th Cir. 1986) (admitting prior state guilty plea as an admission by a party opponent in a subsequent collateral federal case); *United States v. Riley*, 684 F.2d 542, 545 (8th Cir. 1982) (agreeing that defendant's guilty plea in state court constituted an admission and as such was admissible in his federal prosecution), *cert. denied*, 459 U.S. 1111 (1983); *see generally* 30B Michael H. Graham, *Federal Practice and Procedure*, §7017 (2011 & January 2018 update) (recognizing that a majority of decisions admit guilty pleas to offenses punishable by imprisonment of not more than one year); 5 *Weinstein's Federal Evidence*, §803.24[2] (2d ed. 2013) (declaring that "misdemeanor guilty pleas that were made by a
(continued...)

statements against Gillette and they are his own statements. The statements are highly probative, as they relate directly to the elements of the federal charge the Government must prove. What's more, they were not statements made, without consulting counsel, to a traffic or petty offense where Gillette's motivation to defend was minimal or nonexistent."[67] The statements fulfill the evidentiary rule that addresses an opposing party's statements and are admissible under the rule,[68] subject – of course – to the balancing considerations contemplated by Rule 403 of the Federal Rules of Evidence.[69]

## CONCLUSION

Some of Gillette's statements were the product of custodial interrogation and violated *Miranda*. These statements are excludable as substantive trial evidence. But they may be used to impeach Gillette if he testifies. The remaining statements comported with the tenets of *Miranda* and are freely admissible.

---

party to the current litigation may be allowed into evidence as party admissions").

[67]*See and compare* with 30B *Federal Practice and Procedure,* §7017 nn. 6-7.

[68]*See Williams,* 104 F.3d at 216; *Hancock v. Dodson,* 958 F.2d 1367, 1371-72 (6th Cir. 1992); *United States v. Maestas,* 941 F.2d 273, 278-79 (5th Cir. 1991), *cert. denied,* 502 U.S. 1046 (192); *United States v. Overton,* No. 15-CR-9S, 2017 WL 6347084 at **2-4 (W.D.N.Y. Dec. 13, 2017); *United States v. Davis,* 269 F.Supp.2d 1077, 1079-81 (S.D. Iowa 2003); *Hinshaw v. Keith,* 645 F.Supp.180, 184 (D. Me. 1986).

[69]*See Dudley v. Holmes,* No. 9:12-cv-00429 (MAD/RFT), 2014 WL 2772901 at **2-3 (N.D.N.Y. June 19, 2014); *Hinshaw,* 645 F.Supp. at 184.

Neither the Sixth Amendment nor the Fifth Amendment's Due Process Clause (including the equal protection ingredient of the same) prohibits the Government from using Gillette's tribal plea to prove his federal domestic assault offense. The plea was made in proceedings that complied with the ICRA and the procedural safeguards of tribal law.

And both the plea and the statements he made incident to it are admissible as non-hearsay "admissions" by an opposing party. The Government intends to offer the statements against Gillette and they are his own. Still, they may be excluded, if need be, under Rule 403. That is for the District Court to decide separately.

## RECOMMENDATION

Accordingly, for the reasons, and based on the authorities, discussed and cited in this Report, it is hereby

RECOMMENDED that Gillette' Motion to Suppress Statements[70] be granted in part and denied in part. The Motion should be granted insofar as it seeks to exclude, as substantive evidence, the statements he made after Officer Reynolds asked him what happened and before he and Lucille Running Enemy began arguing.[71] In all other respects, the Motion should be denied. It is further

---

[70]*See* Dkt. No. 31.

[71]*See* Mot. Hrg. Exs. 1 at 4:20-41 (8:36:10-31) & 5 at 4 (marked section).

20

RECOMMENDED that Gillette's Motion to Suppress Tribal Court Guilty Plea[72] be denied *in toto*.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[73] Unless an extension of time for cause is later obtained,[74] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[75]  Objections must "identify[] those issues on which further review is desired[.]"[76]

DATED this 29th day of January, 2018, at Pierre, South Dakota.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[72]*See* Dkt. No. 33.

[73]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[74]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[75]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[76]*Arn*, 474 U.S. at 155.